1
2
3
4
5              UNITED STATES DISTRICT COURT

6              EASTERN DISTRICT OF CALIFORNIA

7
GEORGE HERNANDEZ, JR.; JOE A.    )    1:04-cv-5515 OWW DLB
8 HERNANDEZ; MANUEL A. HERNANDEZ; )
and ARMANDO PULIDO,              )    MEMORANDUM DECISION AND
9                                )    ORDER RE PRELIMINARY
                 Plaintiffs,     )    APPROVAL OF CLASS
10                               )    SETTLEMENT AGREEMENT AND
    v.                           )    APPROVAL OF NOTICE.
11                               )
KOVACEVICH "5" FARMS; KENNETH    )
12 KOVACEVICH, JR.; MARK J.      )
KOVACEVICH; CAROL K. YINGST;     )
13 MARSHA RITCHIE; ANN K.        )
TARTAGLIA; and KENNETH           )
14 KOVACEVICH, SR.,              )
                                 )
15               Defendants.     )
_____ )
16

17              I.    **INTRODUCTION**

18
      This matter is before the court on Plaintiffs' unopposed
19
motion for preliminary approval of the Parties' class action
20
settlement agreement ("Settlement Agreement") and approval of the
21
notice of settlement ("Notice").  The proposed Settlement
22
Agreement would resolve a dispute between the Plaintiff Class of
23
seasonal agricultural workers and Defendants Kovacevich "5"
24
Farms, its individual partners, and Kenneth Kovacevich, Sr.
25
("Kovacevich, Sr.") (collectively, "Defendants" or "K5 Farms").
26
Plaintiff Class alleged that Defendants required Class members to
27
perform unpaid, "off-the-clock" work in violation of federal and
28

1

state worker protection laws.  (Doc. 162, Settlement at 2:27).

## II.   FACTUAL BACKGROUND

### 1.   Background Union Activity at K5 Farms.

This lawsuit arises in the context of an ongoing effort by the United Farm Workers of America, AFL-CIO ("UFW") to organize the employees of K5 Farms.  (Doc. 37, Defendants' Opp. at 2:2-3). This effort led to a secret ballot election supervised by the California Agricultural Labor Relations Board, held on August 19, 2003.  (*Id.* at 2:3-5).  In the end, the employees voted 160-95 against UFW representation.  (*Id.* at 2:6-7).  All of the Named Plaintiffs in this lawsuit, while not union members, are members of the UFW's "Organizing Committee," a group actively engaged in promoting union representation on behalf of the UFW.  (*Id.* at 2:11-14).  Moreover, Thomas P. Lynch, who is one of Plaintiffs' counsel, works for the law firm headed by Marcos Camacho.  Marcos Camacho himself, according to an exhibit attached to Defendants' Opposition, serves as General Counsel to the UFW.  (*Id.* at Ex. 5).

### 2.   Facts under which this Case Arises.

Representative Plaintiffs George Hernandez, Jr., Manual A. Hernandez, Joe. A. Hernandez, and Armando Pulido (collectively, "Named Plaintiffs") brought this class action under the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. § 1801 *et seq.* and California state law, on behalf of themselves and all similarly-situated field laborers to recover unpaid wages, accrued interest and penalties, attorneys' fees and

costs, and injunctive relief from Defendants.  (Doc. 162,
Settlement at 2:21-26).  Defendants are engaged jointly in the
business of growing table grapes and other agricultural
commodities, including persimmons, on land located primarily in
Tulare County, California.  (Doc. 88, Second Am. Compl. at 2:16-
19).  The Named Plaintiffs are seasonal farm workers who have
worked in Defendants' table grape fields.  (*Id.* at 2:19-20).  One
of the Named Plaintiffs, Armando Pulido, along with a Subclass,
has also harvested other crops for Defendants.  (*Id.* at 2:20-21).
On behalf of themselves and the Class, Plaintiffs complained that
Defendants required Class members to perform unpaid, off-the-
clock preparation work before the start of their official work
shifts each morning during the harvest, in violation of federal
and state wage and hour laws.  (*Id.* at 2:21-23).  Plaintiffs also
complained that Defendants violated other state law by failing to
keep accurate records of all hours worked, failing to post
required signs, and failing to provide Class members with all
necessary tools and equipment.  (*Id.* at 2:23-26).

The Parties reached a Settlement Agreement on May 4, 2005.
This Settlement comes after several months of negotiations,
aggressively litigated motions, and a failed settlement attempt
in February 2005.  (*See* Doc. 161, Support for Settlement at 4:5-
5:16).  The Named Plaintiffs and Class counsel believe that the
Settlement is fair, adequate, reasonable, and in the best
interests of the Class.  (*Id.* at 3:1-4).

**3**

1

### III.  **PROCEDURAL HISTORY**

2

Three of the four Named Plaintiffs, and another plaintiff

3 whose subsequent withdrawal as a Class representative was

4 approved by the Court, filed the original complaint on April 2,

5 2004 on behalf of themselves and a proposed Class of more than

6 500 similarly situated field laborers.  On August 13, 2004,

7 Plaintiffs moved for a protective order regarding Defendants'

8 communications with putative Class members.  (Doc. 20).  This

9 motion was denied on September 10, 2004.  (Doc. 29).  Plaintiffs

10 amended their complaint on September 30, 2004 to add Plaintiff

11 Pulido as a Class representative and to add a Subclass, of which

12 Plaintiff Pulido is a member.  (Doc. 35).  The allegations of the

13 Subclass encompass unpaid work performed by K5 Farm workers who

14 also harvested persimmons and other crops for Defendant

15 Kovacevich, Sr.  (*Id.* at ¶ 24).[1]

16

Plaintiffs also moved for Class certification on September

17 30, 2004.  (Doc. 31, Plaintiffs' Motion).  On December 2, 2004,

18 the Court certified a Class of "all persons who worked at K5

19 Farms as agricultural field laborers and who were not paid for

20 time worked at the beginning of the day."  (Doc. 44 at 3:15-17).

21 The Court held that the Class includes persons who are owed

22

_____

23 [1] Defendant Kovacevich Sr. controls and owns, as a sole
proprietor, an agricultural business that includes the
24 cultivation and harvest of persimmons, pomegranates, and other
crops.  He has also been, during the relevant period, actively
25 involved in the management and operation of K5 Farms and has
exercised control over the terms and conditions of employment of
26 Class members.  It does not appear from the Settlement Agreement
that work performed on Kovacevich, Sr.'s individual agricultural
27 operations are implicated in this action.  Rather, Kovacevich
Sr.'s role in the operations only of K5 farms is implicated.
28

4

1  "wages that first became due on April 2, 2001 and continuing up

2  to the date that damages are awarded." (*Id.* at 3:17-19).

3      On February 16, 2005, representative Plaintiff Jesus

4  Gutierrez moved to withdraw as a Class representative. (Doc.

5  55). The motion was granted on March 15, 2005. (Doc. 68).

6  Plaintiffs again amended their complaint on April 7, 2005 to

7  clarify certain claims. (Doc. 88). On March 11, 2005, Class

8  counsel mailed the first court-approved Class Notice to 541

9  persons. (Doc. 162, Settlement at 4:4-6). The Notice informed

10 potential Class members of the lawsuit and provided them an

11 opportunity to exclude themselves by completing a Class Exclusion

12 Form enclosed with the Notice and filing it with the Court on or

13 before May 10, 2005. (*Id.* at 4:6-8). By May 20, 2005,

14 approximately 50 of the 541 recipients had filed the court-

15 approved Class Exclusion Form. (*Id.* at 4:9-11). An additional

16 25 signatures of persons who did not sign individual Exclusion

17 Forms appeared on a petition-style exclusion document also filed

18 with the Court. (*Id.* at 4:12-14).

19     On April 1, 2005, Plaintiffs filed a motion for a temporary

20 restraining order for alleged "interference by [D]efendants'

21 agents with the right of [C]lass members to participate in this

22 [action]." (Doc. 74, Motion for Restraining Order at 1:22-25).

23 The Parties later stipulated to a temporary restraining order and

24 the motion was taken off calendar. (*See* Doc. 87, Stipulation and

25 Order).

26     On April 15, 2005, the Parties filed cross-motions for

27 partial summary judgment and responded to these motions on April

28 29 (Defendants) and May 2 (Plaintiffs), 2005. (Doc. 162,

Settlement at 4:15-17).  On May 4, 2005, while the cross-motions for summary judgment were still pending, the Parties reached a compromise on the terms of the Settlement Agreement and, by stipulation, the Parties withdrew their summary judgment motions. On July 6, 2005, Class counsel informally requested an expedited preliminary approval of the proposed Settlement Agreement and approval of the proposed Notice of Settlement.  This request was not granted and the previously scheduled July 11, 2005 preliminary approval hearing was left on the calendar.

## IV.   STANDARD OF REVIEW

### 1.   Settlement Agreement.

Fed. R. Civ. P. 23(e) requires court approval for all class action settlements.  A court may approve a settlement only after a hearing and on finding that it is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(1)(C).  Before conducting a full hearing, a court ordinarily holds a preliminary hearing to determine whether there is a likelihood it could approve the settlement.  *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991).  At the preliminary approval stage, a court examines the submitted materials to determine whether the proposed settlement seems fair on its face as a whole, and worth submitting to the class members.  *Id.*

### 2.   Notice of Settlement.

Fed. R. Civ. P. 23(c)(2)(B) requires that "the best notice practicable under the circumstances" be provided to class members.  Notice must satisfactorily apprise class members of the

terms of the settlement in sufficient detail to afford them the opportunity to decide whether they should accept the benefits offered, opt out and pursue their own remedies, or object to the settlement. *Churchill Village, L.L.C. v. General Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).

### V.   **LEGAL ANALYSIS**

**1.   Settlement Agreement.**

**A.   Terms of Proposed Settlement Agreement.**

**i.   Class Settlement Fund.**

Defendants will make two separate installment payments into a settlement fund ("Settlement Fund"), totaling $1.7 million,[2] which will be processed and distributed by Miner, Barnhill & Galland, P.C. ("MBG").  (Doc. 162, Settlement at 5:9-13).  No portion of the Settlement Fund will revert to any of the Defendants under any circumstances.  (*Id.* at 5:14-15).

Upon preliminary approval by the Court of the Settlement Agreement, a Notice of Class Action Settlement will be mailed to all non-exempt Class members, which will include a Claim Form. (*Id.* at 5:23-25).  The Claim Form will explain that the deadline for submitting claims will be 75 days from the date the Forms are mailed.  (*Id.* at 5:26-27).

Class members who timely submit their claims will be considered "Claiming Class Members." (*Id.* at 5:27-28).  Class

---

[2]  (a)$850,000.00 on November 30, 2005 ("first installment"); (b)$850,000.00 on November 30, 2006 ("second installment")

1 counsel will make two distribution payments to Claiming Class

2 Members promptly upon receipt of each of Defendants' two

3 installment payments into the Settlement fund. (*Id.* at 6:26-

4 7:4).

5    Any money remaining in the Settlement Fund six months after

6 the second distribution, whether resulting from the accrual of

7 interest on the Fund or settlement checks not cleared within six

8 months from issuance, will be used first to pay late claims.

9 (*Id.* at 7:5-8). Late claims will be paid only after the second

10 distribution and only if residual money exists in the Fund at

11 that time. (*Id.* at 7:8-10). If money remains in the Fund after

12 full satisfaction of all late claims, it will be applied to

13 defray costs incurred by Class counsel in locating Class members

14 and/or distributing payments to Class members who reside outside

15 the U.S. at the time of distribution. (*Id.* at 7:11-14). If any

16 money still remains, Class counsel will distribute it *pro rata*

17 among Claiming Class Members, except that if such money is

18 insufficient to provide a "meaningful"[3] *pro rata* distribution, it

19 will be tendered to the California Labor Commissioner for deposit

20 in the state Unpaid Wage Fund. (*Id.* at 7:15-19).

21

22            **ii.   Injunctive Relief.**

23    Defendants agree that neither they nor any of their agents

24 will retaliate in any manner against any person involved in the

25

26    [3]  The Settlement Agreement does not define the standard for
what will be considered "meaningful." The specific standard for
27 what is "meaningful" needs to be specified within the Settlement
28 Agreement.

prosecution of this action.  (*Id.* at 7:20-28).  Defendants will ensure that their record-keeping practices are consistent with Wage Order No. 14 and the California Labor Code.  (*Id.* at 8:1-5). Defendants will also continue to provide pruning shears and clippers to all of their field laborer employees at or before the start of any agricultural season, and will make available, at no charge, protective work gloves for use during pruning season. (*Id.* at 8:6-15).

### iii. Relief for the Named Plaintiffs.

In consideration for their commitment of effort and time, Defendants agree to a bonus of $1,000 to each of the four Named Plaintiffs: George Hernandez, Jr., Joe A. Hernandez, Manuel A. Hernandez, and Armando Pulido.  (*Id.* at 8:18-25).  The four Named Plaintiffs will also be assured continuous seasonal employment, consistent with their past work history, for a period of two years.  (*Id.* at 9:3-4).  Defendants also agree to resolve allegations of demotion and retaliation, raised by family members and close associates of Named Plaintiffs, by restoring their work positions to the positions held prior to this suit.  (*Id.* at 9:7-21).

### iv.  Attorneys' Fees and Costs.

Defendants will pay Plaintiffs' attorneys' fees and costs in three equal installments, totaling $795,000.00.  (*Id.* at 9:23-

27).[4]  Also, Defendants will pay Class counsel up to $25,000.00 for additional attorneys' fees and costs actually incurred in the administration of the Settlement and distribution of payments to Claiming Class Members after final approval of the Settlement. (*Id.* at 10:1-4).

### v.   Defendants' Assurance That They Will Meet Their Obligations Without Job Loss To Class Members.

Defendants have stipulated that they will meet the foregoing financial and other obligations of this Settlement without taking measures which would result in the reduction of their field laborer work force.  (*Id.* at 10:9-15).  In the event that, due to unforeseeable events or conditions beyond Defendants' control, the only way for Defendants to meet their financial obligation to timely make the second installment payment and also remain in operation is either to sell real property on which Class members are working or to reduce their field laborer work force, Defendants will consult with Class counsel about delaying such payment.  (*Id.* at 10:15-18).  Absent agreement between the Parties in such event, no significant reduction[5] in Defendants' field laborer work force may occur without advance approval of the Court.  (*Id.* at 10:19-22).

---

[4]  The three equal installments of $265,000.00 are due on May 1, 2006, May 1, 2007, and November 30, 2007.

[5]  "Significant reduction" in work force accords with the standards set forth in the WARN Act, 29 U.S.C. § 2101 *et. seq.*, and Cal. Lab. Code § 1400 *et. seq.*

1

### vi.   Effective Date.

2      If the Court approves of substantially all the terms

3  described in the Settlement Agreement, the Settlement is to

4  become effective thirty-five (35) days after the Court grants a

5  final judgment order--provided that no notice of appeal is filed.

6  (*Id.* at 10:25-28).   If a notice of appeal is filed, the

7  Settlement is to become effective ten days after all appellate

8  proceedings pertaining to the action have been completed and

9  settlement of the action is final and binding.   (*Id.* at 11:1-5).

10

### vii. Mutual Releases.

11

12      Plaintiffs release Defendants from liability for all claims

13  asserted in this action, any allegations of retaliation that have

14  arisen in connection therewith, and any other claims arising from

15  the set of facts alleged in this action.   (*Id.* at 11:8-17).

16  Defendants likewise discharge Plaintiffs from all claims that

17  arise from the claims and defenses alleged in this action.   (*Id.*

18  at 11:18-22).

19

### B.   Approval of Settlement Agreement.

20

21      "The court must approve any settlement...of the claims...of

22  a certified class."   Fed. R. Civ. P. 23(e)(1)(A).   The court may

23  approve a settlement only after a hearing and on finding that it

24  is fair, reasonable, and adequate.   Fed. R. Civ. P. 23(e)(1)(C).

25  Such approval is required to make sure that any settlement

26  reached is consistent with plaintiffs' fiduciary obligations to

27  the class.   *Fialora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th

28  Cir. 1985).   The court also serves as guardian for the absent

**11**

class members who will be bound by the settlement, and therefore must independently determine the fairness of any settlement. *Id.* However, the district court's role in intruding upon what is otherwise a private consensual agreement is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or collusion between the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned. *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982). Therefore, the settlement hearing is not to be turned into a trial or rehearsal for trial on the merits. *Id.*[6] Ultimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice. *Id.*

The court ordinarily holds a preliminary hearing to determine whether there is a likelihood it could approve the settlement before conducting a full hearing. *Jiffy Lube*, 927 F.2d at 158. The court examines the submitted materials and determines whether the proposed settlement seems fair on its face and worth submitting to the class members.

---

[6] It is not the role of the district court to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute. *Officers for Justice*, 688 F.2d at 625. It is the uncertainty of the outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. *Id.*

### i.   Is the Present Settlement Agreement Fair, Reasonable, and Adequate?

In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, a district court may consider some or all of the following factors: (a) the expense, complexity, and likely duration of further litigation; (b) the amount offered in settlement; (c) the solvency of the defendants; (d) the extent of discovery completed, and the stage of the proceedings; (e) the views and experience of counsel; and (f) any opposition by class members. *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003); *see also In re Montgomery County Real Estate Antitrust Litig.*, 83 F.R.D 305, 316 (D.C. Md. 1979).  This list of factors is not exclusive and the court may balance and weigh different factors depending on the circumstances of each case. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).  This necessarily requires the court to make a careful analysis of all the facts and applicable law. *Montgomery County Real Estate*, 83 F.R.D at 316.

### a.   Expense, Complexity, and Likely Duration of Further Litigation.

The trial of this action has the potential of being complex, expensive, and protracted because it involves a large Class with many causes of action and a high amount in controversy.  Trial of this action will also require significant evidentiary foundation, requiring large expenditures by counsel of both Parties.  The additional expense of further litigation may also diminish the likelihood of full or adequate recovery to members of the Class, whose interests are of paramount concern to the Court.  In

13

contrast, while the Settlement Agreement sets forth a high award, Defendants' financial position has been taken into consideration by both Parties in negotiation, and they believe that the current Settlement Agreement can be met.[7]

### b.   Amount Offered in Settlement.

The Settlement Agreement sets the monetary award to Class members at $1,700,000.00.  (Doc. 161, Support for Approval at 5:4-5).  Class counsel asserts that this figure provides Class damages equal to 100 percent of the Class members' unpaid wages plus penalties of four times the unpaid wages.  (*Id.* at 5:5-6). Class counsel, however, does not provide any evidence of this assertion.  In the final approval stage, the Court is authorized to require evidence of the value of recovery vis-a-vis the value of lost wages.

### c.   Solvency of the Defendants.

Class counsel asserts that it was able to maximize the award for the Class, while at the same time safeguard Class members from any negative effect an excessive recovery might have had on the viability of Defendants' business, or on their continued employment by Defendants.  (*Id.* at 5:6-11).  After careful analysis of Defendants' financial records, the Parties agree to an amount of money and a payment plan that will allow Defendants

---

[7]  Defendants provided financial information, subject to a stipulated protective order, which was used in determining an adequate and reasonable award for Plaintiffs.  (*See* Doc. 86, Protective Order for Financial Info.).

to maintain solvency and sustain their current level of business
operations.  (*See* Doc. 162, Settlement at 12-13).

### d. The Extent of Discovery Completed, and the Stage of Proceedings.

This case has been aggressively litigated, generating an
extensive record and resulting in several pre-trial motions and
orders.  From December 2004 through March 2005, the Parties
engaged in intensive merits discovery, including Plaintiffs'
procurement of nearly 60 declarations and eleven depositions
taken by Defendants' principals, their foremen, and the Named
Plaintiffs.  (Doc. 162, Settlement at 4:1-3).  Both Parties have
filed numerous motions, including motions for a protective order
and temporary restraining order by Plaintiffs, two amended
complaints submitted by Plaintiffs, and motions for summary
judgment submitted by both Parties.  The Settlement proposal was
not hastily arrived at, and indeed, comes after several months of
negotiations and a failed settlement attempt in February 2005.
After conducting extensive discovery, the strengths and
weaknesses of each side's position and their respective trial
risks were exposed, leading to the proposed Settlement Agreement
now presented to the Court.  (Doc. 161, Support for Settlement at
4:22-5:2).

### e. The Views and Experience of Counsel.

Plaintiffs' attorneys recommend the Settlement Agreement as
a significant victory for the Class and an excellent resolution
of Class claims.  (*Id.* at 5:4-5).  They believe that the

15

Settlement Agreement is "fair and reasonable and that it is in the best interests of the [C]lass." (Doc. 162, Settlement at Ex. A-1, 4). Plaintiffs' counsel may present evidence to the court at the final approval stage of proceedings to show experience and skill in farm labor class action suits, which will give their opinion of the Settlement Agreement more weight. Although it appears that Class counsel has experience in farm labor disputes, based on prior representation in this Court,[8] substantive evidence may be submitted by Class counsel to establish their expertise.

### f.   Opposition by Class Members.

The response of the class to the settlement plan is particularly helpful in cases in which the court believes that the settlement is widely understood and intelligently considered by the class. Although Class members have not yet had an opportunity to respond, the court may consider any objections or dissatisfaction expressed by Class members in the final approval stage, at which point Class members will have knowledge of the terms of the Settlement Agreement.


### ii.   Are the Attorneys' Fees Reasonable?

Attorneys' fees provisions included in proposed class action settlement agreements are, like every other aspect of such agreements, subject to the court's scrutiny for fairness,

---

[8]   Miner, Barnhill & Galland represented farm laborers in a class action suit brought before this court in November, 2001. (*See Quevedo v. Dole*, 1:01-cv-6443, Doc. 1).

reasonableness, and adequacy. *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003). "Thus, to avoid abdicating its responsibility to review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Id.* If fees are unreasonably high, there is a "likelihood [] that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have [been] obtained." *Id.* at 964. However, the court's task in reviewing negotiated fees is different from the court's task in fashioning fee awards from scratch. *Robbins v. Alibrandi*, 127 Cal. App. 4th 438, 444 (2005). The court's task in reviewing negotiated fees is simply to determine whether they are facially fair and reasonable. *Id.* This task requires the court to review the settlement agreement as a whole, including the fee award, to ensure that it was fairly and honestly negotiated, is not collusive, and adequately protects the interests of the parties. *Id.* Plaintiffs' attorneys have a duty to limit fees to an amount that represents the value of the work done. *Id.* Therefore, although a negotiated fee may represent a reasoned business decision to settle, a negotiated fee that exceeds a reasonable fee for the attorneys' contribution may not be approved. *Id.*

In calculating attorneys' fees in civil class action suits, the district court has discretion to use either the percentage method or the lodestar/multiplier method. *Hanlon*, 150 F.3d at

1029.[9]   Under the percentage method of determining attorneys'
fees, "the court simply awards the attorneys a percentage of the
fund sufficient to provide class counsel with a reasonable fee."
*Id.*[10]   Class counsel here use the lodestar/multiplier method to
calculate their proposed fees.

Under the lodestar/multiplier approach, the lodestar is
calculated by multiplying the reasonable hours expended by a
reasonable hourly rate.

> This calculation provides an objective basis on
> which to make an initial estimate of the value of a
> lawyer's services.   [Attorneys] should submit
> evidence supporting the hours worked and rates
> claimed.   Where the documentation of hours is
> inadequate, the district court may reduce the award
> accordingly.

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).   The district
court should exclude from this initial fee calculation hours that
were not "reasonably expended."   *Id.* at 434.   Also, "the product
of reasonable hours times a reasonable rate does not end the
inquiry.   There remain other considerations that may lead the
district court to adjust the fee upward or downward..." through
use of multipliers.   *Id.*   Multipliers, which come from a
percentage of the value of the class recovery fund, may be added
to account for such considerations as risk, magnitude and
complexity of the litigation, the quality of the services

---

[9]   When a settlement agreement creates a large fund for
distribution to a class, as is the case here, courts may use
either of these two options in determining what is fair and
reasonable.

[10]   The Ninth Circuit has established 25% as a benchmark
award for attorneys' fees.   *Hanlon*, 150 F.3d at 1029.

1   provided, and the beneficial result achieved.  *Arenson v. Board*

2   *of Trade of Chicago*, 372 F. Supp. 1349, 1351 (D.C. Ill. 1974).

3   However, a strong presumption exists that the lodestar figure

4   represents a reasonable fee, and upward adjustments of the

5   lodestar by use of multipliers are proper only in rare and

6   exceptional cases.  *Jordan v. Multnomah County*, 815 F.2d 1258,

7   1262 (9th Cir. 1987).  Plaintiffs' attorneys in this case do not

8   seek additional payment through use of multipliers.  Therefore,

9   the fees here are based solely on the product of reasonable hours

10  worked times a reasonable hourly rate.

11       The Settlement Agreement sets attorneys' fees at

12  $795,000.00.  Plaintiffs argue that these fees are reasonable and

13  that the Parties negotiated the attorneys' fees provision after

14  agreement on relief for the Class had been reached.  (Doc. 161,

15  Support for Approval at 5:11-13).  Plaintiffs' attorneys' fees of

16  $795,000.00 amount to almost half of the amount Plaintiffs will

17  receive from the settlement.  This figure appears high, and is

18  subject to scrutiny during the final approval stage.   Class

19  counsel will need to show how the attorneys' fees lodestar figure

20  was arrived at by submitting documents and/or declarations that

21  evidence a reasonable hourly rate for their services and

22  establish the number of hours reasonably spent working on the

23  case.  *See Hensley*, 461 U.S. at 433.  At this point in the

24  proceedings, however, attorneys' fees are sufficiently fair and

25  reasonable--within the context of the entire settlement

26  agreement--not to preclude preliminary approval of the Settlement

27  Agreement.

28

### iii. Conclusion.

Based on the posture of the case at the time settlement was proposed, the extent of discovery that had been conducted, the circumstances surrounding the negotiations, and the experience of Class counsel, it appears that the Settlement Agreement was reached as a result of good-faith bargaining at arm's length and without collusion. *See Jiffy Lube*, 927 F.2d at 158-159. Additionally, the amount offered in the Settlement Agreement appears fair, reasonable, and adequate on its face. Although some factors cannot be ascertained at this point in the proceedings, the Settlement Agreement as a whole appears to be fair, reasonable, and adequate on its face. Preliminary approval of the Settlement Agreement is **GRANTED**.

### 2.  **Notice of Settlement.**

#### A.   **Terms of the Proposed Notice of Settlement.**

The Notice of the proposed Settlement is addressed to "all persons who worked in the grape fields for Kovacevich '5' Farms at any time from April 2, 2001 to the present." (Doc. 162, Settlement at Ex. A-1, 1). The Notice includes sections on: "What is the purpose of this Notice?" "What is the class action about?" "Who is in the Class?" "How much money will Defendants pay to the Class under the Settlement and how much will I receive?" "Can I hire my own lawyer?" "What should I do if I do not want to be part of the Settlement" "How could the Settlement affect me?" and many other sections. (*Id.* at Ex. A-1, 1-2).

**B.  Approval of the Notice of Settlement.**

Adequate notice is critical to court approval of a class settlement under Fed. R. Civ. P. 23(e).  *Hanlon*, 150 F.3d at 1025.  "The best notice practicable under the circumstances" must be provided to class members.  Fed. R. Civ. P. 23(c)(2)(B).

> The notice must concisely and clearly state in plain, easily understood language:
>
> - the nature of the action,
>
> - the definition of the class certified,
>
> - the class claims, issues, or defenses,
>
> - that a class member may enter an appearance through counsel if the member so desires,
>
> - that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and
>
> - the binding effect of a class judgment on class members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).  Notice is satisfactory in the context of settlement if it fairly apprises class members of the terms of the settlement in sufficient detail to afford them the opportunity to decide whether they should accept the benefits offered, opt out and pursue their own remedies, or object to the settlement.  *Churchill Village, L.L.C. v. General Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see also Hanlon*, 150 F.3d at 1025.

The Notice presented meets the requisite standards of clarity and conciseness as required by Fed. R. Civ. P. 23.  It explains the nature of the action, the definition of the Class, a brief summary of the Class claims, and that a Class member may enter an appearance through counsel if the member so desires. (*See* Doc. 162, Settlement at Ex. A-1).   The Notice provides

1  Class members with the opportunity to opt-out of the Settlement

2  Agreement, giving specific instructions of when and how they may

3  do so.  (*See id.* at Ex. A-1, 4).  In addition, the Notice

4  explains the binding effect of the Settlement Agreement on Class

5  members, stating that they "will be bound by it, and [] will not

6  be able to bring a separate lawsuit alleging the same or similar

7  claims."  (*See id.* at Ex. A-1, 2).

8      Although the Notice is sufficiently clear and concise, the

9  method by which Class counsel intends to notify Class members of

10  the Settlement has not been justified.  The Parties' have

11  stipulated that Notice will be sent to the Class by first-class

12  mail, and that a notice of the settlement will also be published

13  in the local Spanish-language newspaper, "Noticiero Semanal", of

14  Porterville, California.  (Doc. 167, Stipulation at 2:18-20).

15  Plaintiffs' counsel provides no evidence or justification for why

16  these two methods are the best "practicable" way to reach Class

17  members, pursuant to Fed. R. Civ. Proc. 23(c)(2)(B).  Class

18  counsel shall provide justification for using these methods

19  instead of other methods.

20      Approval of the Notice of Settlement is **GRANTED** subject to

21  Class counsel providing sufficient justification for the method

22  of notification.

23

24                    **VIII.    <u>CONCLUSION</u>**

25      For the reasons set forth above:

26

27      1.    Preliminary approval of the Settlement Agreement is

28            **GRANTED**;

                              **22**

2.   Approval of the Notice of Settlement is **GRANTED**, subject to further order of the Court upon receipt of Class counsel's justification for the method of notification;

    A.   Class counsel will send Notice by first-class mail to Class members at their last-known addresses within seven days after receipt of this Order, and will promptly thereafter file a certificate of mailing with the Court;

    B.   Class counsel will have a notice of the Settlement published in the "Noticiero Semanal" of Porterville, California, on or before August 10, 2005;

3.   The Court will hold a Fairness Hearing for final approval of the Settlement on September 26, 2005 at 10:00 a.m.; The Court will consider any objections to the fairness, reasonableness, or adequacy of the Settlement and any pleadings or other materials filed in support of or opposition to the Settlement; No objection may be considered unless a written statement of the objection is filed with the Clerk of the Court no later than two weeks before the Fairness Hearing; **The above dates shall be set forth in bold type with a warning, where indicated in the Notice to the Class;**

1

2      4.    Any pleadings or other materials in support of or

3            opposition to the Proposed Settlement shall be filed

4            with the Court no later than one week before the

5            Fairness Hearing; **The above date shall be set forth in**

6            **bold type with a warning, where indicated in the Notice**

7            **to the Class;**

8

9      5.    Requests for exclusion must be filed no later than two

10           weeks before the date of the Fairness Hearing.

11

12

13

14

15

16   **SO ORDERED.**

17

18

19                                  _____
                                            **Oliver W. Wanger**
20                                   **UNITED STATES DISTRICT JUDGE**

21

22

23

24

25

26

27

28

24